STATE OF NORTH CAROLINA v. NATHANIEL COLLINS

No. 8218SC1017

(Filed 1 November 1983)

1. **Homicide § 28.8— instructions on accident or misadventure**

The trial court's instructions in a second degree murder case could not have misled the jury to believe that the defense of accident or misadventure applied only to involuntary manslaughter.

2. **Homicide § 28.5— defense of another—insufficient evidence**

The evidence in a second degree murder case did not require the trial court to instruct on the defense that defendant killed his wife's lover while defending his wife from attack where defendant testified that he broke into the motel room occupied by his wife and her lover when he heard his wife say, "No, no, don't do that," that he saw his wife and her lover run into the bathroom and saw a gun pointed at him through a partially open door, that a struggle for the gun ensued and shots were fired which struck both the wife and her lover, that he "couldn't say" whether he thought his wife was in danger after she and her lover ran into the bathroom, and that defendant did nothing to aid his wife after the shooting.

3. **Homicide § 27.1— discovered adultery—heat of passion—sufficiency of instructions**

The trial court's instruction that adequate provocation "may consist of anything which has a natural tendency to produce such passion in a person of average mind and disposition" encompassed discovered adultery, the only possible heat of passion basis raised by the evidence, and the trial court did

not err in failing specifically to refer in the instructions to discovered adultery as an adequate provocation.

**4. Criminal Law § 84— determination of legality of seizure unnecessary**

    In this prosecution for murder and felonious assault, it was unnecessary to determine the legality of the seizure of a pair of bloodstained jeans in a warrantless search of defendant's home where the State was unable to tie the jeans to the crimes, and where defendant was admittedly in the room in which the victims were shot and was in close proximity to the bleeding victims.

**5. Criminal Law § 43.2— admissibility of photographs**

    A witness's testimony that, except for some trees which had been removed, photographs showing an area between a motel parking lot and a highway fairly depicted the area on the date of the crimes provided a sufficient basis for admission of the photographs to illustrate testimony that defendant could not have seen his wife's car in the motel parking lot while he was driving along the highway, especially since the removal of the trees increased the visibility of the parking lot from the highway.

APPEAL by defendant from *Seay, Judge.* Judgments entered 22 May 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 15 March 1983.

Defendant was charged with second-degree murder of his wife's lover, Calvin Freeman, assault with a deadly weapon with intent to kill, inflicting serious bodily injury upon his wife, Barbara Collins, and breaking and entering a motel room with intent to commit the felony of murder therein. After a jury trial, he was convicted of each charge.

The State's evidence tended to show the following: Unbeknownst to the defendant, apparently, his wife Barbara Collins was having an affair with Calvin Freeman, who worked where she did. Mr. and Mrs. Collins, who lived in High Point, had had various differences during the months preceding the incidents involved herein, and just the day before had talked about separating. Around 8 o'clock on the morning of May 25, 1981 (Memorial Day), Mrs. Collins received a phone call at home from Freeman, who asked her to meet him in Room 310 of the Airport Hilton Inn later in the day, and told her where the room key was hidden. She answered the telephone in the kitchen, but there was an extension in the bedroom where the defendant appeared to be sleeping. After showering, dressing, and going several other places, Mrs. Collins picked up the room key and went to the motel room around noon. She removed all her clothing except for her

bra and panties and was sipping some white wine she had pur-
chased when Freeman arrived at approximately 1:15 p.m. with
some beer. He stripped to his boxer shorts, and a short time later
the couple heard a knock on the door, but upon looking through
the peephole saw no one. Within seconds, the room door was
splintered by the defendant, who chased the two lovers into the
bathroom and shot them both with a pistol.

A short while later, a Hilton Inn employee, noticing the
busted room door, found both Barbara Collins and Calvin Free-
man on the floor injured. She had two bullet wounds to her head
and was still alive; he had a bullet wound in the back and another
in the back of the neck and was dead. Mrs. Collins was taken to
the hospital, where she underwent emergency surgery for her in-
juries. She told her doctors and some deputy sheriffs that the
defendant was the one who shot her. Later that afternoon,
sheriff's deputies converged on the defendant's home, but he was
not there, and after making a warrantless search, they seized a
pair of bloodstained blue jeans. Several hours later, after confer-
ring with his brother and his attorney, the defendant voluntarily
surrendered to the Guilford County Sheriff's Department.

Defendant testified to the following: He slept until 9 or 10
o'clock the morning involved and decided to work in the yard,
since it was a holiday. During the afternoon, needing more grass
seed, he was on his way from their home in High Point to a seed
store in Greensboro that had been recommended to him when he
saw his wife's car parked at the Airport Hilton. He stopped at the
motel and went in to look for her. Not finding her in the lobby or
restaurant, he inquired at the front desk and was told that Mr.
Freeman was registered in Room 310. Upon arriving at the room
door, he heard his wife say, "no, no, don't do that," knocked on
the door without receiving an answer, and thinking that she was
being hurt, burst through the door. He saw her and Freeman run
into the bathroom, and upon following them, saw a gun pointed at
him through the partially open door. A struggle over the gun en-
sued, shots were fired, and then defendant "blacked out." His
memory was not regained until he got back to High Point later
that afternoon.

Rebuttal testimony and demonstrative evidence was pre-
sented tending to show that the defendant could not have seen

his wife's car from the highway he claimed to have been traveling on.

*Attorney General Edmisten, by Assistant Attorney General Lucien Capone, III, for the State.*

*McNairy, Clifford & Clendenin, by Locke T. Clifford and Michael R. Nash, and Robert S. Cahoon, for defendant appellant.*

PHILLIPS, Judge.

Though defendant's appeal is subject to dismissal because his brief did not link the various points argued to his assignments of error, as required by Rule 28(b)(3) of Rules of Appellate Procedure, making it necessary, in each instance, for us to check the entire collection of assignments, of which there is a great number, because of the gravity of the case we choose to dispose of it on the merits. In doing so, however, it is not necessary to discuss all of defendant's many contentions of error, none of which have merit.

[1] Defendant's hopes for an acquittal were largely based upon the defense of accident or misadventure — not because the evidence so clearly or strongly supported that defense, however, but because the nature and extent of the evidence marshalled against him left him with little else to rely upon. In instructing the jury concerning the death of Calvin Freeman and defendant's indictment for second-degree murder, the court also charged on the subordinate offenses of voluntary manslaughter and involuntary manslaughter. Immediately after instructing the jury on second-degree murder, voluntary manslaughter, and involuntary manslaughter, in that order, the court charged on accident and misadventure. Defendant contends that the sequence and content of the instructions led the jury to believe that his defense of accident or misadventure applied only to the offense of involuntary manslaughter. The instruction was as follows:

> Now, members of the jury, the defendant contends and the State denies that the defendant in this instance acted in such a way that the deceased, Calvin Freeman, died by accident or by misadventure, and if Calvin Freeman died by accident or misadventure, that is, without wrongful purpose or criminal negligence on the part of the defendant, Nathaniel Collins, the defendant Collins would not be guilty.

The burden of proving accident is not on the defendant. His assertion of accident is merely a denial that he has committed any crime. The burden remains on the State to prove the defendant's guilt beyond a reasonable doubt.

We think it most unlikely that the jury was confused by this instruction. It contains no implication that the defense of accident or misadventure was limited in application; instead, it states quite plainly that the defense denied that defendant had committed "any crime" at all. The instruction as a whole can only mean, we think, that if Calvin Freeman died without any wrongful purpose or criminal negligence on defendant's part, the defendant was not guilty of any crime in connection therewith. No doubt the jury would have so understood it, even if the instruction had stood alone; that they had just been told earlier in the charge that each of the crimes that defendant was being tried for involved wrongful purpose or criminal negligence could not have caused the jury to believe otherwise. In cases very similar to this one the instruction has been approved as both legally sufficient and non-confusing. *State v. Walker*, 31 N.C. App. 199, 228 S.E. 2d 772 (1976); *State v. McLamb*, 20 N.C. App. 164, 200 S.E. 2d 838 (1973).

Defendant also contends that he was erroneously deprived of the benefit of two other defenses that were available to him — that defendant killed Freeman while defending his wife from attack, and that the killing occurred in the "heat of passion" upon adequate provocation — by the trial judge either failing to charge or by charging inadequately or incorrectly. Though the defenses were somewhat contradictory to each other, as well as to the defense of accident and misadventure, if they were raised by the evidence, the defendant was entitled to have them charged on if he so desired. Consistency, though usually an advantageous course in litigation, is generally not required of those being tried for crime. 22 C.J.S. *Criminal Law* § 54.

[2] But the evidence did not give rise to the defending another defense, and the trial judge did not err in refusing to charge on it. *State v. Shepherd*, 220 N.C. 377, 17 S.E. 2d 469 (1941). Although defendant testified that he busted into the motel room because his wife sounded frightened, the rest of his testimony on the matter was that: After he got in the room, his wife and Freeman ran into the bathroom, a gun was pointed at him

through a crack in the door, someone said, "Shoot the S.O.B.," and he began struggling for the gun; and that he "couldn't say" whether he thought his wife was in danger after she and Freeman ran into the bathroom. Had the defendant aided his wife in any way, even after the shooting, his contention at trial and now that he was rescuing her from danger would be more colorable; but he left the premises with her lying on the floor wounded and bleeding.

[3] The judge did instruct on "heat of passion," however, defendant's objection being that discovered adultery was not specifically referred to therein as an adequate provocation. In giving this instruction, the judge said: "Adequate provocation may consist of anything which has a natural tendency to produce such passion in a person of average mind and disposition. . . ." In our view, this instruction encompassed adultery, the only possible heat of passion basis raised by the evidence, and, no doubt, was so understood by the jury. Indeed, it may not have been necessary to charge on heat of passion at all, since there was scarcely any evidence as to defendant's heat of passion *after* seeing indications of adultery upon entering the motel room, the only time a legally sanctioned heat of passion could have developed. His testimony concerning the developments that occurred after he entered the room was about struggling for the gun and trying to avoid being shot; being overcome by anger was not mentioned. In all events, the court's failure to charge more pointedly on heat of passion did defendant no legal detriment.

[4] In a warrantless search of defendant's house, shortly after the crime when there was good reason to think that he was concealed therein with a gun, the police found a pair of bloodstained blue jeans lying on the bed, which were exhibited during the trial. Though defendant's motion to suppress, denied by the court, raises some interesting search and seizure questions, they are immaterial to the appeal and need not be discussed, since the State was unable to tie the jeans to the crime, and defendant was admittedly in the bloodstained room in close proximity to the bleeding victims. If defendant's presence at the scene of the homicide had been disputed, the exhibit certainly could have prejudicially affected the verdict and we would determine whether the search and seizure complied with Fourth Amendment requirements; but under the circumstances that existed the

exhibit could not have affected the verdict, prejudicially or otherwise, and determining whether the search and seizure was valid would avail nothing.

[5]  If defendant's explanation as to how he happened to stop by the Airport Hilton and find his wife and Freeman in Room 310 seemed at all plausible to the jury, which is unlikely, the State's rebuttal evidence probably made it seem less so. Deputy Sheriff Willis, who participated in the initial investigation of the crime and saw Mrs. Collins' car in the lot shortly after the victims were discovered, testified that: It was more than 400 feet from the road to the edge of the parking lot; the parking lot was lower than the road and surrounded by a chain link fence; at the time involved the view from the road of the part of the lot where her car was parked was obstructed at different points by either a service station, a wooded area, a steak house, or a small church building. He also testified that a few months after the shooting all the trees in the wooded area between the service station and the steak house were cut down, but the stumps were still there, and except for that change the entire area looked substantially as it did almost exactly a year earlier when Freeman was killed. Over defendant's objection, several photographs of the motel parking lot, taken the day before from different points in the road, were received into evidence to illustrate the witness's testimony. The photographs showed the service station, the stumps in the area where the trees had been, the steak house, the church, and different parts of the chain link fence and parking lot. The principal basis for defendant's objection to admitting the photographs was the changes that occurred in the area between the time when defendant says he saw the car and a year later when the pictures were taken. The witness testified that except for the woods that had covered the space between the service station and the steak house the scene depicted by the photographs fairly illustrated the way the area looked the day the crime was committed. This was basis enough, in our opinion, for the photographs being received as illustrative evidence. Illustrative evidence, being just that, does not have to be exact. 1 Brandis N.C. Evidence § 34 (2d rev. ed. 1982). The changes, not being significant enough to deprive the pictures of their illustrative value, affected the evidence's weight, rather than its admissibility. *State v. Shepherd*, 220 N.C. 377, 17 S.E. 2d 469 (1941). Furthermore, the changes apparently

increased, rather than decreased, the visibility of the parking lot from the road, and thus could not have prejudiced the defendant, who testified that his wife's parked car was visible and recognizable as he drove along the road.

In our opinion, the defendant received a fair trial and was skillfully represented by able counsel. But cases are governed by their circumstances, and the mold of this case was irrevocably cast when defendant voluntarily placed himself in a situation that all but established his guilt as charged; and the mold, if anything, was hardened by the rather unlikely explanation that he gave of his presence and participation.

No error.

Judges ARNOLD and BECTON concur.